IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, v. LOUIS CORDERO, Defendant. | CRIMINAL ACTION NO. 03-88-6 CIVIL ACTION NO. 12-4601 |
|---|---|

Baylson, J.                                                                                       February 6, 2013

### MEMORANDUM RE: MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

**I.**     **Overview**

Petitioner Louis Cordero filed a pro se motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on August 9, 2012. (ECF 414). His Petition contended that he should be should have been credited by the Sentencing Court for time served on a state conviction that was "relevant conduct" to his federal conviction. The Government filed a Response on November 13, 2012, arguing the Court should dismiss the Petition due to lack of venue and due to an appellate waiver in Cordero's plea agreement, and should deny the Petition on the merits. (ECF 416). Petitioner filed a timely, pro se Reply (ECF 417). By Order of December 21, 2012, the Court appointed private counsel Walter S. Batty, Jr., Esquire, to represent Petitioner. (ECF 419). Mr. Batty informed the Court that due to scheduling conflicts, he would need additional time to provide proper representation to Petitioner and he filed a Motion for Extension of Time or for Leave to Withdraw. (ECF 21). The Court grants Mr. Batty's Motion for Leave to Withdraw. For the reasons set forth below, the Court concludes

Cordero's Petition should be considered on the merits, despite the Government's arguments to the contrary, and that the Petition should be GRANTED.

**II.     Facts and Procedural History**

Louis Cordero is currently confined in federal prison in Lexington, Kentucky. He was sentenced to a 144-month term of imprisonment by this Court on December 9, 2005, after pleading guilty to conspiracy to distribute crack cocaine and heroin. Cordero had been facing a mandatory life sentence but it was reduced due to his cooperation with the government. However, the Court chose not to credit Cordero with time served before March 6, 2003 – the date he entered federal custody – at the Sentencing Hearing.  As part of his plea agreement, Cordero waived his rights to appeal and to file collateral attacks under 28 U.S.C. § 2255.

Cordero nonetheless appealed his sentence to the Third Circuit, which dismissed the appeal on May 7, 2007. He then filed a Section 2441 petition with the District Court for the District of New Jersey, challenging the calculation of his release date by the Bureau of Prisons ("BOP"), which was denied. He filed a Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(2) with this Court, seeking a reduction based on the changes in the crack cocaine guidelines, which was also denied.

In his current Petition, Cordero alleges he should have received credit for time served for one of his state convictions, because the state offense was "relevant conduct" to his federal conviction.

**III.    Discussion**

  **A. Venue**

The Government contends the Court should dismiss Cordero's Petition due to improper venue. The venue determination turns on whether Cordero's petition should have been filed under Section 2255 or Section 2241 of Title 28. Under Section 2255, a federal prisoner "may move the court which *imposed the sentence* to vacate, set aside or correct the sentence." 28 U.S.C. § 2255 (emphasis added). Accordingly, if Cordero's petition was correctly filed under Section 2255, venue in this Court is appropriate. Section 2241 instructs that petitions should be filed in the district court in the place where the prisoner *is confined*. 28 U.S.C. § 2243 (emphasis added); see also Rumsfeld v. Padilla, 542 U.S. 462, 447 (2006); United States v. Addonizio, 442 U.S. 178, 185 (1979). Accordingly, if Cordero's petition should have been filed under Section 2241, venue would lie in Kentucky, where he is confined presently.

The Court concludes that Cordero's petition was properly filed under 28 U.S.C. § 2255 because he is challenging the validity of his sentence as imposed by this Court, not the manner in which the sentence was executed by the Bureau of Prisons ("BOP"). Often, when a petitioner files a motion for credit for time served, courts will hold that Section 2241 is the proper vehicle. See United States v. Grimes, 641 F.2d 96, 99 (3d Cir. 1981) (holding that when the petitioner requested credit on his federal sentence for time spent in state custody, "the proper avenue . . . [was] under 28 U.S.C. § 2241"); Soyka v. Alldredge, 481 F.2d 303, 304-05 (3d Cir. 1973) (holding a claim for pre-sentence credit brought under 18 U.S.C § 3568, the predecessor statute to 18 U.S.C. § 3585, was cognizable under Section 2241). But the reason courts consider Section 2241 to be the proper avenue in these cases is because the petitioners' challenges concern credit determinations made by the BOP, not by the district court. United States v. Stackpole,

<mark>3</mark>

406 F. App'x 586, 586 (3d Cir. 2011) ("Stackpole . . . argued that the Bureau of Prisons improperly refused to modify his sentence to give him credit for time served in state detention. . . . Because Stackpole has challenged the manner in which his sentence was executed (as opposed to the validity of his sentence), he seeks relief that is exclusively available under § 2241."); United States v. Smith, 355 F. App'x 656, 657-58 (3d Cir. 2009) (holding Smith's claim for credit after his sentence was imposed involved "an administrative rather than a judicial responsibility" and was cognizable under § 2241); Grimes, 641 F.3d at 99 ("[T]his claim, like the previous one, is a challenge to the sentence as executed by the prison and parole authorities and should be made on a petition for a writ of habeas corpus, 28 U.S.C. § 2241, not under 28 U.S.C. § 2255 whose terms cover challenges to sentences as imposed."). Courts deem these motions for credit to be challenges to the execution of the sentence rather than challenges to the sentence's validity, and thus properly filed under Section 2241.

Here, however, Cordero's Petition makes clear that that he is not bringing a challenge to credit calculations made by the BOP, but rather, to the validity of the sentence as imposed by this Court. His petition states: "I was supposed to be sentenced under U.S.S.G. Manual § 5G1.3(b)(2)" because "[t]he instant offense and the offense for which the undischarged term of imprisonment were imposed relate to the same crime and criminal conduct." (Pet. at 6) (ECF 414). He continues: "Under U.S.S.G. Manual 5G1.3(b)(2), the Court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guidance range for the instance offense." (Id.) Cordero's challenge resembles those that courts have deemed appropriately filed under Section 2255. E.g. United States v. Hernandez, 2012 WL

4

3704750, at *1-3 (E.D. Pa. Aug. 28, 2012) (involving challenges to the district court's imposition of a sentence enhancement under the Armed Career Criminal Act); Smith v. Lindsay, 2008 WL 275717, at *2 (M.D. Pa. Jan. 30, 2008) ("Petitioner's claim for credit on his sentence is a challenge to the validity of his sentence because he contends the sentencing judge was obligated to give him the credit. . . . Petitioner should therefore have proceeded in the sentencing court under section 2255.").

Accordingly, Cordero properly filed a Section 2255 petition and venue lies in this Court.

### B. Waiver of Appeal and Collateral Attack

Cordero entered a guilty plea on February 25, 2004. His plea agreement contained an appellate and collateral attack waiver, which stated:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> > a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
> > b. If the government does not appeal, then notwithstanding the waiver provision set forth above, the defendant may file a direct appeal but may raise only claims that: (1) the defendant's sentence exceeds the statutory maximum; or (2) the sentencing judge erroneously departed upward from the otherwise applicable sentencing guideline range.
>
> If the defendant does not appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

(ECF 180). The appellate waiver was also mentioned at the Plea Hearing. (ECF 179).

5

The terms of the waiver in Cordero's plea agreement are clear: Cordero waived the right to bring a collateral attack under Section 2255 for any reason. Under <u>United States v. Khattak</u>, 273 F.3d 557 (3d Cir. 2001), appellate waivers are enforceable when entered into knowingly and voluntarily, except for in "unusual circumstance[s] where an error amounting to a miscarriage of justice may invalidate the waiver." <u>Id.</u> at 561-62. The <u>Khattak</u> Court declined to "earmark specific situations" where a miscarriage of justice may occur, <u>id.</u> at 563, but noted that in other circuits, courts had found waivers-of-appeal to be invalid when sentences were imposed in excess of the maximum penalty provided by law, <u>see</u> <u>United States v. Brown</u>, 232 F.3d 399, 403 (4th Cir. 2000)), or where the plea agreement resulted from ineffective assistance of counsel, <u>see</u> <u>United States v. Joiner</u>, 183 F.3d 635, 644-45 (7th Cir. 1999)). In <u>United States v. Mabry</u>, 536 F.3d 231 (3d Cir. 2008), the Third Circuit directed district courts to investigate a broad range of factors to assess whether enforcing an appellate waiver would work a miscarriage of justice: "'[T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of the error on the government, and the extent to which the defendant acquiesced in the result.'" <u>Mabry</u>, 536 F.3d at 242-43 (quoting <u>United States v. Teeter</u>, 257 F.3d 14, 25-26 (1st Cir. 2001)).

In cases where defendants challenge the length or fairness of their sentences in the face of appellate or collateral attack waivers, courts in this Circuit proceed by *first* determining there was no sentencing error on the merits, and *then* concluding it would not be a miscarriage of justice to enforce the waiver. See <u>United States v. Pierce</u>, 476 F. App'x 984, 988 (3d Cir. 2012) (examining the alleged sentencing error on the merits and

6

determining it had no impact on defendant's sentence, and then concluding enforcement of the appellate waiver would "not amount to a 'miscarriage of justice'"); United States v. Phillips, 461 F. App'x 135, 138-140 (3d Cir. 2010) (determining there were no procedural deficiencies in the sentencing hearing because the district court adequately explained its within-guideline sentence, and then concluding the appellate waiver should be enforced); United States v. Moore, 2012 WL 1932175, at *3-4 (E.D. Pa. May 29, 2012) ("First, we did not commit error in determining that Moore was a Career Offender. . . . Thus, we conclude that there was no error at sentencing. . . . We conclude that enforcement of Moore's waiver of his right to bring a motion under 28 U.S.C. § 2255 will not result in a miscarriage of justice."); United States v. Rivera, 2011 WL 4852303, at *3-4 (M.D. Pa. Oct. 11, 2011) (holding the court did not err in designating defendant as a career offender under the Guidelines and then concluding the waiver of collateral attack should be enforced); United States v. Lloyd, 2010 WL 2375962, at *3-4 (E.D. Pa. June 8, 2010) (assessing the imposition of a sentencing enhancement in the face of a collateral-attack waiver). Accordingly, the Court will not summarily enforce the waiver provision without first assuring itself that no sentencing error occurred below, such that enforcement of the waiver would not work a miscarriage of justice. Accordingly, the Court turns to the merits of Cordero's petition.

**C. Whether Cordero Deserves Credit for Time Served in State Custody**

Cordero argues that at sentencing, this Court did not properly credit him with time served on his undischarged state sentence when calculating his federal sentence, as required by U.S.S.G. § 5G1.3(b). Section 5G1.3(b) provides:

> If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instance offense of conviction . . . and that was the basis for

7

> an increase in the offense level for the instance offense . . . the sentence for the instance offense should be imposed as follows:
>
>> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>> (2) the sentence for the instance offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b). Cordero contends his 144-month sentence should have been reduced by thirteen months, the period of time he served in state custody between February 2002 and March 2003, because the state conviction for which he served that time was "relevant conduct" to his federal sentence.

At the Sentencing Hearing, the Court imposed a sentence of 144 months imprisonment and determined the sentence would start to run from March 6, 2003, the day Cordero was brought from state custody to federal custody. Cordero was credited with close to three years he had already served in federal court, but not for any time he served in state custody before March 6, 2003. (Sentencing Hearing Trans. at 50) (ECF 277). The Court held: "I don't know if you are going to face any back time on your State Court conviction because it depends how much time you served in – in your State Court sentence of two and a half to five years before you went into Federal custody, but I can't give you any credit for any time before March 6th, 2003. It doesn't appear like you have served two and a half years before that. It appears it was more like a year [sic] a month. So you may be facing – you may be facing additional State Court time. I don't – I don't know." (Id. at 43).

This determination was in error. The PSR and the transcript from the Sentencing Hearing show that *at least one* of Cordero's three state convictions was considered "relevant conduct" to his federal conviction. According to the PSR, all three of Cordero's adult criminal convictions, from the Philadelphia Common Pleas Court, were part of his federal conviction. His state convictions had been for possession of controlled substances with intent to deliver on: (1) Oct. 4, 1999, at 800 West Huntingdon Street (heroin); (2) Feb. 4, 2000, at 2500 North 9th Street (heroin); and (3) July 3, 2001, at 2851 North Hope Street (marijuana). For each conviction, the PSR listed "0" Criminal History points and wrote: "This conviction does not receive criminal points as it is considered part of the instant offense." (PSR at 13-14).

At the Sentencing Hearing, there was a bit of confusion regarding how these three convictions should be treated. After some discussion, the government reformulated its position to argue that the first two state convictions should *not* be treated as "relevant conduct" for the federal charge (they should instead should be counted as prior felony drug convictions for the purposes of 21 U.S.C. § 851), but the third conviction – at Hope Street – should be treated as part of the instant criminal offense. The transcript shows:

> The Court: So, now the next question that I have for Mr. Hassinger is on these three adult convictions it shows zero points.
>
> Probation Officer Hassinger: That is correct, Your Honor. The reason being because the three convictions that occurred in State Court are related to this instant offense you can't give him criminal history points for that because it is conduct which is already factored into the –
>
> The Court: Okay. All right.
>
> Probation Officer Hassinger: -- the offense part of this.

The Court: So those offenses, Mr. Troyer, for which he was convicted and given two and a half to five are part of the conspiracy in this case, is that right?

Mr. Troyer: Yes, they are conduct which – they are conduct which – which is part of this – part of this case at least to the – at least to the – as to the first offense which was in the 800 block of West Huntington Street and the third offense which was at the 2800 block of North Hope Street. The one at the 2800 block of North Hope Street is – is within a block of, or in the same block where the – where the offenses were occurring in this indictment.

The Court: Well what about the other two?

Mr. Troyer: The other two –

The Court: The October 4th, '99 on West – 800 West Huntington Street, now is that part of this case?

Mr. Troyer: It's – it – we don't know that it is. It is not – it was not specifically pled in this case as part of this case. 800 West Huntington Street is a good eight – eight blocks at least –

The Court: It is not an overt act in the indictment?

Mr. Troyer: No, it is not an overt act listed in the indictment and similarly the 2500 block of North Ninth Street is also not a –

The Court: Well that is the arrest of February 4th, 2000, right?

Mr. Troyer: Yes, Your Honor.

The Court: That is not an overt act either?

Mr. Troyer: *No.*

The Court: Well are you saying you have a dispute with Mr. Hassinger as to whether they should be counted or not?

Mr. Troyer: No, I don't and under the circumstances, I mean I don't – I don't dispute.

Probation Officer Hassinger: Your Honor, I am at somewhat of a loss. This – the report was originally done by another presentence investigator –

The Court: Right.

> Probation Officer Hassinger: --and I kind of came at the tail end . . . so I have to take at face value what she has written in the report.
>
> Mr. Troyer: I had – yes, I had some discussions with Ms. Marrero and actually with Ms. Sandra Luehrs-Shaw who was coordinating some of these as well in the – in the – as to the overall case. And I know she had some question about it and my discussions with Ms. Shaw were basically in an abundance of caution. She felt that it was more – the more prudent thing was not to – not to give the – points –because it was in the same time frame.
>
> The Court: All right, but then my question is on the information charging prior offenses whether these are really all prior offenses? *If they are overt acts in this case then at least the third one, the one he was arrested on July 3rd of 2001, at 2851 North Hope Street, that wouldn't be a prior offense, would it?* Otherwise it is – don't we have a double jeopardy issue? That is – that is a question.
>
> Mr. Troyer: Well, I don't know that for 851 purposes it would be, but even – I would say it – *even if the Court discounted the one that occurred in the 2800 block of Hope Street, then that would still leave – leave two – two prior felony drug convictions and it would still qualify under – under 851.*

(Sentencing Hearing Trans. at 34-37) (emphasis added) (ECF 277).

Accordingly, the government conceded at the Sentencing Hearing that Cordero's third state conviction – for possession of a controlled substance on July 3, 2001, at 2851 North Hope Street – should be "discounted" for Section 851 purposes and should instead be deemed part of the federal conspiracy. The Court appears to have accepted this argument. Under the Sentencing Guidelines, accordingly, Cordero should have been credited with his time served for this third state conviction. See U.S.S.G. § 5G1.3(b)(1) ("If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."). Cordero served thirteen months in state custody for the July

11

3, 2001 conviction, between February 2002 and March 2003, and his federal sentence should have been reduced accordingly.[1]

***

For the reasons set forth above, the Court grants Cordero's Petition on the merits. An appropriate order follows.

O:\Criminal Cases\03-88-6 Cordero, U.S. v\Memorandum of Law.doc

---

[1] The Government contends 18 U.S.C. § 3585(b) bars Petitioner's ability to receive credit towards his federal sentence for time served on his state sentence, because the statute provides: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has *not* been credited against another sentence." 18 U.S.C. § 3585(b) (emphasis added). Here, Cordero's 13 months in state custody was credited against his state sentence(s), so the Government argues Section 3585(b) prevents this Court from reducing his federal sentence for the same time served. The problem with the Government's argument is that 18 U.S.C. § 3585(b) applies to credit determinations made by the BOP, not to sentencing determinations made in the first instance by a district court. The Sentencing Guidelines direct district courts to make the very credit awards that Section 3585(b) prohibits – reductions in a federal sentence for time served (and credited) towards a state sentence, as long as the state conviction arose from "relevant conduct." See U.S.S.G. § 5G1.3(b) ("If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instance offense of conviction . . . the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment . . .").

Courts in the Third Circuit and elsewhere have recognized the difference between Section 3585(b) and the Sentencing Guidelines. Delestre v. Pugh, 196 F. App'x 75, 76 (3d Cir. 2006) ("The District Court is correct that 18 U.S.C. § 3585(b) prohibits the award of 'double' credit for time served under a state sentence. However, § 3585(b) does not limit a court's authority pursuant to the U.S. Sentencing Guidelines Manual § 5G1.3 to account for time served on an undischarged state sentence.") (citing Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), *superseded on other grounds by statute*; Bailey v. Nash, 134 F. App'x 503, 505 (3d Cir. 2005) ("In Ruggiano, we explained that the sentencing court's authority under § 5G1.3(c) to "adjust" a sentence is distinct from the BOP's authority under 18 U.S.C. § 3585(b) "credit" a sentence . . . . [T]he "adjustment" that the sentencing court exclusively can award under § 5G1.3(c) is a sentence reduction designed to account for time spent in custody on a prior conviction. On the other hand, the credit that BOP exclusively awards under § 3585(b) accounts for time served in detention prior to the date the federal sentence commences."); Lopez v. Terrell, 654 F.3d 176, 178-179 (2d Cir. 2011) ("If a defendant's presentence custody *has* been credited to another sentence, no § 3585(b) credit is available, but the Sentencing Guidelines provide a functional equivalent. Under the version of the Guidelines applicable in this case, when sentencing a defendant with an undischarged term of imprisonment . . . a district court '[s]hould adjust the sentence for any period of imprisonment already served . . .'") (quoting U.S.S.G. § 5G1.3(b) cmt. 2).